Filed 9/29/14  In re Adrian T. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ADRIAN T., JR. et al., Persons Coming Under the Juvenile Court Law. | D065809 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. CJ1051C-D) |
| v. | |
| BRIANNA T. et al., | |
| Defendants and Appellants. | |

APPEALS from orders of the Superior Court of San Diego County, Laura J. Birkmeyer, Judge.  Affirmed.

Julie E. Braden, under appointment by the Court of Appeal, for Defendant and Appellant, Brianna T.

Law Offices of Rosemary Bishop and Rosemary Bishop, under appointment by the Court of Appeal, for Defendant and Appellant, Adrian T., Sr.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.

In this juvenile dependency case, Brianna T. and Adrian T., Sr. (Adrian Sr.) appeal (1) jurisdictional and dispositional orders under Welfare and Institutions Code section 387[1] removing their minor sons from the custody of their paternal grandmother and (2) orders terminating parental rights under section 366.26. In its orders under section 387, the juvenile court found that the minors' placement with their paternal grandmother, E.G., had not been effective and changed their placement to foster care. Adrian Sr. contends that the evidence does not support the court's findings, and Brianna joins in his arguments. In terminating Adrian Sr. and Brianna's parental rights, the court found that the beneficial parent-child relationship exception to adoption did not apply. (§ 366.26, subd. (c)(1)(B)(i).) Adrian Sr. contends that the evidence also does not support this finding, and Brianna again joins. We conclude that the evidence supported the juvenile court's orders and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On December 16, 2011, the San Diego County Health and Human Services Agency (the Agency) petitioned the juvenile court under section 300, subdivision (b), on behalf of three-year-old Adrian T., Jr. (Adrian Jr.) and two-year-old Markus T.[2] The

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] At the same time, the Agency petitioned the court on behalf of Adrian Jr. and Marcus's half-brothers, 10-year-old Dylan L. and seven-year-old Devon L. Dylan and Devon are not part of this appeal, so they will be referenced only where necessary. Similarly, because Brianna joins Adrian Sr.'s contentions, and does not assert any independent error as to the court's orders, we discuss her involvement in the minors' dependency case only where necessary.

2

Agency alleged a history of domestic violence between Adrian Sr. and Brianna, including an incident where Adrian Sr. grabbed Brianna during an argument and Brianna responded by scratching him. Later, Adrian Sr. violated a restraining order by entering the family home past midnight. Adrian Sr. had mental health issues, including a suicide attempt where he drank half a bottle of vodka and prepared a glass of cleaning product (CLR) to drink as well. Adrian Sr. left the glass of CLR on the counter where it was reachable by Adrian Jr. and Markus. Markus tried to drink the CLR, but he did not incur any injury. Upon his arrest for violating the restraining order, Adrian Sr. again threatened suicide. He began banging his head against the bars in a police patrol car. Police had to place Adrian Sr. in a four point restraint. The Agency also alleged that Brianna has a history of methamphetamine use and had recently tested positive for the drug.

On the basis of these allegations, the Agency concluded that Adrian Jr. and Markus had suffered, or were at substantial risk of suffering, serious physical harm or illness as a result of their parents' domestic violence, mental issues, and drug abuse. The juvenile court found that the Agency had stated a prima facie case under section 300 and later sustained the amended allegations of the petitions. The court removed Adrian Jr. and Markus from their parents' custody and placed them with their paternal grandmother, E. The court ordered that reunification services be provided to Adrian Sr. and Brianna.

Adrian Jr. and Markus stayed with E. for approximately seven months. During this time, Adrian Sr. made substantial progress with his case plan.[3] He progressed from supervised visitation with the minors, to unsupervised visitation, to overnight stays. Adrian Sr. eventually had a 60-day trial visit with Adrian Jr. and Markus, which culminated in their placement with him.

After two months of placement with Adrian Sr., the Agency detained Adrian Jr. and Markus again and filed a supplemental petition under section 387. The Agency alleged that Adrian Sr. had violated his restraining order and engaged in a physical fight with Brianna in the minors' presence. Adrian Sr. later left the minors with Brianna unsupervised, in violation of the court's orders. Adrian Sr. admitted abusing alcohol because of the stress of caring for the minors and not having a job.[4]

The court sustained the allegations of the supplemental petition and removed Adrian Jr. and Markus from their father's care. The court ordered them placed in a licensed foster home pending placement with E. The court terminated Adrian Sr.'s reunification services and scheduled a selection and implementation hearing under section 366.26.

---

[3]   Brianna did not make substantial progress. Her reunification services were terminated at the court's six-month review hearing.

[4]   In its detention report, the Agency relayed comments from Brianna that Adrian Sr. had a history of losing his temper and hitting the minors' half-brothers, Dylan and Devon. Brianna said that Adrian Sr. was not physically abusive to Adrian Jr. and Markus, but he did yell at Adrian Jr. and was mean to him. Brianna also said that E. was mean to Markus, that she would yell at him, and that she would push him to get him to sit down. Brianna did not want the minors placed with E.

Soon afterwards, Adrian Jr. and Markus were again placed with E. in the family home. The placement was generally positive, though the Agency had several concerns. Markus did not speak much to E. and refused to follow her instructions. Markus also had emotional and behavioral problems. The Agency provided an in-home therapist who worked with E. and Markus to address their relationship. Although initially resistant, E. began to work with the therapist and Markus.

The Agency also investigated a number of child abuse referrals involving Markus and E. The first referral came after Markus sustained a bruise on his cheek. Markus reported that it was caused by E. pushing him, and Adrian Jr. confirmed the story. However, Markus changed his story several times, and E. denied any abuse. Markus denied being afraid of E. The referral was eventually closed as inconclusive.

A second referral came after Markus reported that E. had pushed him again, causing a bump on his leg. Adrian Jr. said that E. pushed Markus because Markus did not listen to her. This referral was evaluated out.

A third referral was generated after Markus sustained two bruises on his forehead. E. reported the bruises and stated that Markus had fallen in the park. Markus, however, reported to a visitation monitor that "grandma hurt me" and that his head still hurt. In a later interview, Markus reported that the bruises were accidents. However, he again reported that "grandma hurt me." Markus demonstrated how E. had picked him up by his waist, because he would not come to eat, and then let him fall to the ground. Markus denied being hit or pushed by E. He denied being afraid of E. and said he enjoyed living

5

with her.  A medical doctor concluded that Markus's bruises were consistent with an accidental fall.  The referral was closed as unfounded.

In a fourth incident, which did not result in a referral, Markus was taken for a medical examination after multiple bruises were noticed on his left arm.  Markus reported that "grandma didn't hurt me, I didn't fall."  The examination revealed additional bruising on his knee and back.  However, the examining physician concluded that the bruises were nonabusive and likely accidental.

A fourth referral came after E. reported that Markus had scratches on his upper lip and under his nose.  E. said that Markus told her he had injured himself by falling in the bathroom.  During a visit with Adrian Sr., Markus repeated that explanation.  Adrian Jr. agreed.  After repeated questioning by Adrian Sr., however, Markus reported that "grandma hurt me," "grandma scared me," "grandma is mean," and "grandma was crying."  This referral was closed as unfounded.

A fifth referral was investigated after Markus told his mother, during a visit, that he slept in the bathroom.  Adrian Jr. then stated that E. was being mean and pushed Markus in the bathroom.  Markus said that he bled, pointed at his mouth, and said he was better.  Markus did not have any injuries at the time.  This referral was closed as unfounded.

The in-home therapist, Denise Von Rotz, noted that Markus was having tantrums and had been resistant to bathing.  Von Rotz did not believe that E. was physically abusive.  For example, Markus did not seem fearful of E.  Von Rotz thought that Markus saw E. as "mean" because she set limits and did not have tolerance for his misbehavior.

6

Von Rotz noted some improvement in the relationship between Markus and Estella, but it appeared that E. may not be able to meet Markus's needs. Later, she reported that Markus was doing much better and meeting his treatment goals.

Despite these issues, the Agency sought to engage E. in discussions about permanent plans for Adrian Jr. and Markus. She consistently held out hope that the minors would be returned to their parents. However, E. agreed that she could take legal guardianship over the minors and care for them permanently. She did not want to consider adoption.

Adrian Sr. continued to have supervised visits with the minors. He enrolled in a substance abuse treatment program, a parenting class, and a trade school. He filed a petition under section 388, seeking to have Adrian Jr. and Markus returned to his care. The court found that Adrian Sr.'s petition did not state a prima facie case and denied the petition.

At the Agency's request, the court continued the selection and implementation hearing under section 366.26 several times to allow investigation into the child abuse referrals involving E. After consideration, the Agency recommended that the minors remain with E. and that a permanent plan of guardianship be ordered. Although the Agency determined that Adrian Jr. and Markus were highly adoptable, E. had requested guardianship and was meeting their needs. E. was willing to care for the minors until they were 18 years old and, potentially, to adopt them.

In response, counsel for Adrian Jr. and Markus filed a petition under section 388 seeking to change their placement to foster care. The petition argued that E. was not

7

committed to permanence and instead continued to believe that the minors' parents could reunify with them. The petition also recounted the history of child abuse allegations against E. and E.'s difficulties parenting Markus. It noted, in particular, the minors' repeated claims that E. had pushed Markus and been mean to him. The court found that the minors' petition stated a prima facie case. The court scheduled a hearing on the petition to coincide with the selection and implementation hearing under section 366.26.

In the meantime, the Agency received another child abuse referral involving Markus and E. On his left arm, Markus sustained an oval bruise the size of a large grape. His right arm had at least four bruises of the same size. E. said that the bruising was caused by the boys dropping toys on each other.

The next day, the Agency social worker assigned to the family, Sandra Rubio, took Markus for a medical evaluation. Markus reported that he had an "owie" on his forehead. He said that he had hit his head on a wall and that "grandma pushed me." Markus said this occurred "a little bit ago." Markus also reported the bruises on his arms. He said that Adrian Jr. had pinched his arms, causing the bruising. Markus said that he was not scared at home.

Markus was examined by Dr. Jennifer Davis. Markus repeated his explanation for the bruising. Davis believed that the bruises could be from pinches, but she was concerned they could be grab marks. She did not hear Markus's explanation for his head pain and thus believed it to be accidental. Rubio consulted with her supervisor and returned Markus to E. E. was visibly upset.

8

Rubio then went to Adrian Jr.'s school to interview him. Adrian Jr. knew about the bruises on Markus's arms, but he denied causing them. He smiled when he spoke with Rubio, and Rubio had concerns that Adrian Jr. was not telling the truth. When Rubio finished the interview, she encountered E. and Markus in the lobby. E. was very angry and claimed her rights had been violated.

Later the same day, Rubio consulted with her supervisor and Davis again. Davis believed that the bruises had not been caused by normal child's play. When Davis heard that Markus had reported his head pain came from E. pushing him, Davis concluded that this injury was "super concerning and was consistent with hitting the wall."

Davis's notes indicate that she reviewed Markus's history of bruising. She noticed that an earlier doctor had expressed concern about the minors' statements regarding E. Davis also observed that Markus's demeanor with her was uncharacteristically shy and reserved. Viewed as a whole, Davis believed the earlier incidents were potentially evidence of physical abuse. Davis wrote, "In considering all of these visits, I am highly concerned that Markus is being physically abused in his grandmother's home."

The Agency decided to detain Adrian Jr. and Markus and bring them into protective custody. Rubio, another social worker, and a police officer went to E.'s home to remove the minors. E. became upset, claiming that she would not allow the minors to be removed without a court order. A second police officer was called. The social workers eventually removed Adrian Jr. and Markus while the officers confined E. to her kitchen. Adrian Jr. and Markus did not show any emotion during the removal. During

9

the car ride to Polinsky Children's Center (Polinsky), an emergency shelter, Markus complained that his feet hurt. Adrian Jr. was heard telling Markus, "say I pinched you."

Several days after their detention, Rubio interviewed Adrian Jr. and Markus at Polinsky. Markus again stated that Adrian Jr. caused the bruises on his arms. Markus reported that Adrian Jr. had "big nails." When Rubio asked about Markus's head, he said: "Adrian hit me with a toy." When Rubio asked again, he said: "I don't know, nobody pushed me, no." Rubio asked Markus whether he wanted to see E. He replied, "I don't want to see grandma." When asked why, Markus said he wanted to go to sleep. Rubio then asked whether he wanted to see grandmother after his nap, and he said "okay." When Rubio asked Adrian Jr. whether he had caused Markus's bruises, he said no. When Rubio asked Adrian Jr. whether he wanted to see E., he said "yes," then "no," then "I don't know."[5]

The Agency filed supplemental petitions under section 387 for Adrian Jr. and Markus. The Agency alleged that placement with E. was no longer appropriate in light of Markus's continued bruising and his statement that E. had pushed him. The Agency noted Davis's conclusions that Markus's bruises were not consistent with normal child's play and that Markus's head pain was consistent with hitting a wall. At the detention hearing, the juvenile court found that the Agency had made a prima facie showing on both petitions.

_____

[5] During a later interview at Polinsky, Rubio asked Markus if he wanted to see E. Markus replied "no, no, no." Adrian Jr. also said he did not want to see E. When asked why, he said "[b]ecause she will be mad at Markus." Adrian Jr. said E. would be mad at Markus "[b]ecause he didn't listen to grandma."

After several weeks at Polinsky, Adrian Jr. and Markus were placed in a licensed foster home. The foster parents expressed their interest in adopting Adrian Jr. and Markus. The Agency changed its recommendation from guardianship to a permanent plan of adoption.

After placement in their foster home, several marks, bruises, and scratches were noticed on Markus at various times. Markus did not report any abuse, and each of the injuries was determined to be accidental. Markus's accidents included: (1) hitting his cheek on a safety rail in his toddler bed; (2) throwing a blanket over his head and walking into a door; and (3) opening a door too quickly and hitting his forehead. Adrian Jr. also had a scratch or bruise near his left eye, which was caused by Markus accidentally swinging a spoon and hitting him. In general, however, Adrian Jr. and Markus enjoyed their foster home, showed affection for their foster parents, and showed great improvement in their moods and behaviors.

The juvenile court held a contested hearing on the allegations of the Agency's petitions under section 387. The court received a number of the Agency's reports into evidence and heard testimony from social worker Rubio. E. also testified. In closing arguments, Adrian Sr. contended that the Agency's allegations of abuse were unfounded and that placement with E. was still appropriate in light of the relative placement factors in section 361.3. The minor's counsel urged the court to sustain the petition and find that placement with E. had not been effective.

After trial, the court made a true finding on the allegations of the petitions. The court stated, "I do find as credible the child's reports that the grandmother has pushed

11

him; and on some occasions that pushing has resulted in him ramming his head, or hitting his head on walls or floors, which is not inconsistent with the nature of the injuries that the child has sustained." The court distinguished the injuries that Adrian Jr. and Markus received in foster care. In those cases, the minors had not reported any abuse, and credible and specific explanations were given for most of the minors' injuries. The court found Adrian Sr.'s suggestion of Agency bias unfounded. The court also found, by clear and convincing evidence, that placement with E. was no longer appropriate under the relative placement factors in section 361.3. Among other things, the court was concerned that E. could not provide a safe and stable environment, that she could not meet their physical and psychological needs, and that she was insufficiently committed to permanence for the minors.

Adrian Sr. requested a continuance of the disposition hearing under section 387, which the court granted. The court scheduled the hearing on disposition to coincide with the scheduled selection and implementation hearing under section 366.26, approximately three weeks later.

The parties stipulated that the evidence received during the jurisdictional hearing would be applied to the dispositional hearing as well. The court received an additional Agency report and heard further testimony from social worker Rubio. The Agency recommended placement in the minors' current foster home. The minors' counsel agreed. Adrian Sr. argued that the foster home was inappropriate given Adrian Jr. and Markus's continued injuries. Adrian Sr. urged the court to place the minors with their paternal aunt

12

Lizbeth T. or, in the alternative, to continue to assess potential relative placements. Adrian Sr. did not believe the Agency gave Lizbeth a fair chance at placement.

The court noted that Lizbeth had not been approved for placement by the Agency, due in large part to the size of her home. With only one bedroom, it did not meet state regulations for the number of people who would live there. Because Lizbeth's home had not been approved, the court could not place Adrian Jr. and Markus there. (See § 361.3, subd. (a)(8).) In addition, even if Lizbeth's home had been approved, the court found that placement with her would not be appropriate under the relative placement factors in section 361.3. The court again found no evidence of Agency bias against relative placement. The court believed that social worker Rubio went "above and beyond" to preserve placement with E. "far longer than some other social workers would have done . . . with the evidence surrounding bruising and injuries to the children." The court also found that Rubio adequately investigated placement with Lizbeth, but Rubio was justifiably hesitant given the size of Lizbeth's home, her unwillingness to move, and her attitude towards the Agency. The court therefore determined that there was not an approved relative who was able and willing to care for Adrian Jr. and Markus and ordered their placement in foster care.

The court proceeded with the selection and implementation hearing under section 366.26. Adrian Sr. and Brianna contested the Agency's recommendation of adoption. Adrian Sr. argued that Adrian Jr. and Markus were not adoptable based on their mental and behavioral issues, that Adrian Sr. had a beneficial parent-child relationship with Adrian Jr. and Markus that outweighed the benefits of adoption, and that the minors' half-

13

brothers had a beneficial sibling relationship with Adrian Jr. and Markus that outweighed the benefits of adoption. Brianna argued that the beneficial parent-child relationship exception applied to her as well and that the beneficial sibling relationship exception applied.[6] Adrian Jr. and Markus's counsel supported the Agency's recommendation of adoption.

The parties stipulated that the evidence received during the jurisdictional and dispositional hearings on the Agency's section 387 petition would also be considered in the section 366.26 hearing. As relevant to the parties' contentions on appeal, the Agency's reports describe consistent visitation between Adrian Sr. and the minors. Since Adrian Jr. and Markus's removal from his care, Adrian Sr. generally had weekly visits with them. Those visits were largely pleasant and affectionate, with Adrian Sr. often bringing food or toys for the minors. Adrian Jr. and Markus address Adrian Sr. as "Daddy." However, Adrian Jr. and Markus did not have trouble separating from Adrian Sr. at the end of visits, and they seemed excited to return to their foster parents. Adrian Jr. once told his foster parent that he did not want to attend the visits.

Adrian Sr. sometimes had difficulty controlling his emotions during visits. For example, he made inappropriate comments in front of Adrian Jr. and Markus. On one occasion, he left 15 minutes into his visit because Markus was crying. The visitation monitor noted that Adrian Sr. had been mumbling to himself and was unsteady. The

---

6     The court allowed the minors' half-brothers to participate in the proceedings, and they objected to Adrian Jr. and Markus's adoption based on the beneficial sibling relationship exception.

14

monitor believed Adrian Sr. might have been under the influence of alcohol or drugs. Adrian Sr. claimed to have been tired after a long drive. In the period leading to the selection and implementation hearing, Adrian Sr. began to miss phone calls and visits. At one visit, Adrian Sr. was sarcastic and short with the minors. He stated, "I don't want to be here" and left after only a few minutes. Both Adrian Jr. and Markus looked very distraught. The Agency noted that Adrian Sr. had placed Adrian Jr. and Markus in very unsafe environments when they were in his care. Considering these facts, the Agency believed that the minors saw Adrian Sr. only as an extended family member and not as a parental figure.

During the section 366.26 hearing, the court heard testimony from social worker Rubio. The court also heard stipulated testimony from the minors' half-brothers, and live testimony from Brianna, regarding their respective relationships to Adrian Jr. and Markus.

After hearing the evidence and argument, the court found that Adrian Jr. and Markus were adoptable, no exception to adoption applied, and adoption was in their best interests. With respect to Adrian Sr.'s contention that the beneficial parent-child relationship exception applied, the court found that Adrian Sr. had met his burden to show that he had maintained regular visitation with the minors. However, Adrian Sr. had not shown that he had a substantial positive emotional attachment to Adrian Jr. and Markus such that they would be greatly harmed if the relationship were severed. The court specifically noted Adrian Sr.'s inappropriate behavior during visits and his inability to meet the minors' emotional needs.

15

The court terminated Adrian Sr. and Brianna's parental rights and ordered a permanent plan of adoption for Adrian Jr. and Markus. Adrian Sr. and Brianna appeal.

DISCUSSION

I

Adrian Sr. first challenges the juvenile court's orders under section 387. Brianna joins Adrian Sr.'s arguments. Section 387 provides: "An order changing or modifying a previous order by removing a child from the physical custody of a parent, guardian, relative, or friend and directing placement in a foster home . . . shall be made only after noticed hearing upon a supplemental petition." (§ 387, subd. (a).) "The supplemental petition . . . shall contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the child or, in the case of a placement with a relative, sufficient to show that the placement is not appropriate in view of the criteria in Section 361.3." (§ 387, subd. (b).)

"Under California Rules of Court, rule 5.565(e)(1), a hearing on a supplemental petition is potentially a two-phase proceeding. 'In the first phase of a section 387 proceeding, the court must follow the procedures relating to a jurisdictional hearing on a section 300 petition . . . . [Citation.] At the conclusion of this so-called "jurisdictional phase" of the section 387 hearing [citation], the juvenile court is required to make findings whether: (1) the factual allegations of the supplemental petition are or are not true; and (2) the allegation that the previous disposition has not been effective in protecting the child is, or is not, true. (Rule [5.565(e)(1)].) If both allegations are found to be true, a separate "dispositional" hearing must be conducted under the procedures

16

applicable to the original disposition hearing . . . .' [Citation.] 'The ultimate "jurisdictional fact" necessary to modify a previous placement with a parent or relative is that the previous disposition has not been effective in the protection of the minor.' " (*In re A.O.* (2010) 185 Cal.App.4th 103, 110.)

"We review an order sustaining a section 387 petition for substantial evidence." (*In re A.O.*, *supra*, 185 Cal.App.4th at p. 109.) "Evidence is ' "[s]ubstantial" ' if it is ' " 'reasonable, credible, and of solid value.' " ' [Citation.] We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence. Instead, we draw all reasonable inferences in support of the findings, view the record in favor of the juvenile court's order and affirm the order even if other evidence supports a contrary finding. [Citations.] The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or order." (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1161-1162.)

The Agency's petitions under section 387 alleged as follows: "On or about or between November 15, 2013 to present, the placement with the relative was no longer appropriate in view of the criteria in [section] 361.3 in that: the minor [or his sibling] continues to have unexplained scratches, bruises, or injuries while in the care of the relative caregiver, and the [minor or his sibling] recently stated the bruise on the left side of his forehead was caused by the grandmother when she pushed him and he hit his head on the wall." "The doctor stated the bruises on his arms were not consistent with normal child's play and the bruise to the minor's head was consistent with hitting the wall."

17

A

Adrian Sr. first contends that the evidence did not establish "substantial abuse or neglect" by E.[7]  However, a petition under section 387 need not meet such a standard. "Obviously, when, as in the present case, there is a supplemental petition, there already exists a basis for juvenile court jurisdiction.  The law does not require that a fact necessary to establish jurisdiction under section 300 be established to warrant a change in placement.  [Citation.]  Neither is physical or emotional abuse the test under section 387 for modifying a previous placement." (*In re Joel H.* (1993) 19 Cal.App.4th 1185, 1200 (*Joel H.*).)  Where, as here, the petition under section 387 is directed at a relative, the factual finding required for jurisdiction is that "the placement is not appropriate in view of the criteria in Section 361.3." (§ 387, subd. (b); *In re A.O.*  (2004) 120 Cal.App.4th 1054, 1061; *In re Miguel E.* (2004) 120 Cal.App.4th 521, 547.)  The quoted language referencing the relative placement factors in section 361.3 was a later addition to the statute.  (See Stats. 1997, ch. 793 § 28; *In re Miguel E.*, *supra*, at p. 541.)

*Joel H.*, on which Adrian Sr. relies, does not compel a different conclusion.  As an initial matter, the case was decided before the addition to the statute clarified the relevant

---

7      In his opening brief, Adrian Sr. also appears to attack the sufficiency of the petitions' allegations.  The Agency responds that Adrian Sr. has forfeited this argument by not challenging the sufficiency of the petitions in the juvenile court.  "Generally, the sufficiency of a petition cannot be challenged for the first time on appeal.  [Citation.]  If the jurisdictional findings are supported by substantial evidence, the adequacy of the petition is irrelevant." (*In re Javier G.* (2006) 137 Cal.App.4th 453, 458.)  In his reply, Adrian Sr. claims that his challenge to the allegations of the petition is the same as his challenge to the evidence.  We will therefore assess Adrian Sr.'s arguments in the context of the sufficiency of the evidence, rather than the allegations of the petition.  (See *ibid.*)

standard. (*Joel H.*, *supra*, 19 Cal.App.4th at p. 1185.) Moreover, the evidence in *Joel H.* showed that one minor had been spanked on his bottom and that the relative caregivers were "loud" and a "little harsh in their tone" with the minors. (*Id.* at p. 1202.) The court therefore concluded "there was insufficient proof of actual harm or danger of harm to [the minor's] physical and emotional well-being to support the court's finding that the previous disposition order had not been effective in protecting the youngster." (*Id.* at p. 1203.) Although the court referenced "actual harm or danger of harm" in the context of the facts before it (*ibid.*), the court's opinion makes clear that such a finding need not be made in all cases. The court emphasized the then-prevailing statutory standard: "[R]egardless of whether there was insufficient evidence of physical or emotional abuse, the critical appellate issue is whether there was substantial evidence to support the court's finding that the previous disposition was not effective in protecting [the minor]." (*Id.* at p. 1201.)

Thus, while harm or risk of harm is relevant to several factors under section 361.3, no specific factual finding regarding harm or risk of harm is required to establish jurisdiction under section 387. (See *In re A.O.*, *supra*, 120 Cal.App.4th at p. 1061; *In re Miguel E.*, *supra*, 120 Cal.App.4th at p. 547; see also *Joel H.*, *supra*, 19 Cal.App.4th at p. 1201.) We will address Adrian Sr.'s substantive arguments regarding the harm or risk of harm to Adrian Jr. and Markus in the next section, *infra*, in the context of these factors.

B

Adrian Sr. next argues that the evidence does not support the juvenile court's finding that placement with E. was no longer appropriate in light of the relative placement factors in section 361.3. (See § 387, subd. (b).) These factors include the following: "(1) The best interest of the child, including special physical, psychological, educational, medical, or emotional needs. [¶] (2) The wishes of the parent, the relative, and child, if appropriate. [¶] . . . [¶] (5) The good moral character of the relative and any other adult living in the home, including whether any individual residing in the home has a prior history of violent criminal acts or has been responsible for acts of child abuse or neglect. [¶] (6) The nature and duration of the relationship between the child and the relative, and the relative's desire to care for, and to provide legal permanency for, the child if reunification is unsuccessful. [¶] (7) The ability of the relative to do the following: [¶] (A) Provide a safe, secure, and stable environment for the child. [¶] (B) Exercise proper and effective care and control of the child. [¶] (C) Provide a home and the necessities of life for the child. [¶] (D) Protect the child from his or her parents. [¶] . . . [¶] (H) Provide legal permanence for the child if reunification fails. [¶] . . . [¶] [and] (8) The safety of the relative's home." (§ 361.3, sub. (a).)

Although a relative is entitled to preferential consideration, there is no "evidentiary presumption that placement with a relative is in a child's best interest." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 320.) "The statute acknowledges . . . that the court is not to presume that a child should be placed with a relative, but is to determine whether such a

placement is *appropriate*, taking into account the suitability of the relative's home and the best interest of the child." (*Id.* at p. 321.)

The juvenile court expressly weighed the evidence according to the relevant factors, and the evidence supports the court's finding that the minors' placement with E. was no longer appropriate. Primary among these factors was E.'s inability to provide a safe, secure, and stable home environment for Adrian Jr. and Markus. (See § 361.3, subd. (a)(7)(A); see also *Joel H.*, *supra*, 19 Cal.App.4th at p. 1201.) Markus had multiple scratches and bruises in E.'s care. He explained many of these scratches and bruises by reporting that "grandma pushed me" or "grandma hurt me." Adrian Jr. corroborated those statements, confirming that E. was mean to Markus and pushed him.

Although the Agency determined that the initial referrals were unfounded or inconclusive, the Agency could (and did) reassess the meaning of these referrals after the last instance of injury to Markus. After that injury, Markus again reported that "grandma pushed me" and he hit his head on a wall. The examining physician, Davis, noted that Markus's head injury was "super concerning and was consistent with hitting the wall." The additional injury to Markus, a series of bruises on his arm, was not consistent with normal child's play. Davis reviewed Markus's history and concluded: "In considering all of these visits, I am highly concerned that Markus is being physically abused in his grandmother's home."[8]

---

[8]    Adrian Sr. is correct that Adrian Jr. and Markus were otherwise consistently clean, well-dressed, adequately fed, and protected from their parents. However, these facts do not negate the allegations of physical abuse. From the evidence presented, the trial court

21

Adrian Sr. claims that Davis's opinion cannot support the court's findings because (1) Davis recommended further investigation, (2) Davis added new clinical observations in her second report on Markus's injuries, and (3) Davis's opinion allegedly was inconsistent with the opinion of Markus's in-home therapist Von Rotz (who did not believe Markus was abused) and the opinions of other medical doctors (who did not believe Markus's prior injuries were abusive). We disagree. Regardless of any further investigation, Davis had a high concern that Markus was being physically abused in E.'s home. And we find nothing suspicious about Davis's decision to include additional observations in her second report, after further reflection and analysis. As to the alleged conflict of opinions, Adrian Sr.'s argument effectively asks this court to weigh Davis's credibility against earlier medical practitioners (who did not have knowledge of Markus's latest injury) and against Von Rotz's opinions. Indeed, Adrian Sr. claims that "Von Rotz's opinions should have been given greater weight." Adrian Sr.'s argument runs directly counter to our standard of review on appeal. We may not reweigh the evidence, make credibility determinations, or attempt to resolve conflicts in the evidence. (*In re T.W.*, *supra*, 214 Cal.App.4th at pp. 1161-1162.) Adrian Sr.'s, attempt to undermine Davis's opinion is therefore unpersuasive.

Adrian Sr. also points to the minor injuries sustained by Adrian Jr. and Markus after they were removed from E.'s care. These injuries are distinguishable, however,

---

was entitled to find that E. had not provided a safe, secure, and stable environment for the minors. Likewise, Adrian Sr.'s contention that the Agency did not follow the proper procedure in investigating the last allegation against E. does not call into question the court's findings.

because they were not accompanied by any statements from the minors that their foster parents had hurt them, or pushed them, or were mean to them. The additional injuries do not affect the legitimate concerns arising from the injuries Markus sustained while in E.'s care.

Adrian Sr. claims that E. was able to meet the minors' psychological and emotional needs. (See § 361.3, subd. (a)(1).) The evidence showed that Markus's behavioral issues began to resolve during E.'s care. However, E. previously had a troubled relationship with Markus, including allegations that she favored Adrian Jr. Moreover, the history of physical abuse allegations against E. showed a serious deficiency in her ability to care for the minors psychologically and emotionally. While Adrian Sr. claims that Adrian Jr. and Markus would be harmed by the change in placement, the evidence showed that they were thriving in the care of their foster parents.

The wishes of the parents, the relative, and the minors were at best mixed. (See § 361.3, subd. (a)(2).) While Adrian Sr. and E. wanted the minors returned to her care, Adrian Jr. and Markus did not appear inclined to return. Adrian Jr. and Markus did not show any emotion during their removal from E.'s home. Shortly after removal, Markus stated, "I don't want to see grandma." As to whether Adrian Jr. wanted to see E., he replied "yes," then "no," then "I don't know." In later interviews, both Adrian Jr. and Markus said they did not want to see E. When asked why, Adrian Jr. said E. would be mad at Markus "[b]ecause he didn't listen to grandma."

As their grandmother, E. had a long-standing relationship with Adrian Jr. and Markus, which is a relevant factor. (See § 361.3, subd. (a)(6).) However, their

23

relationship was negatively affected by conflicts between E. and Markus and the allegations of physical abuse by E. The minors' unwillingness to see E. after their removal showed the quality of the relationship at the time. Contrary to Adrian Sr.'s, suggestion, we cannot reweigh the evidence on this issue. (*In re T.W.*, *supra*, 214 Cal.App.4th at pp. 1161-1162.) The trial court also properly found that E.'s "good moral character" had been called into question by the allegations of physical abuse. (See § 361.3, subd. (a)(5).) In light of Davis's analysis, these allegations cannot properly be described as "unfounded," as Adrian Sr. claims.

Finally, the trial court found that E.'s commitment to adoption was not credible, thus undermining her ability to provide legal permanence for Adrian Jr. and Markus. (See § 361.3, subd. (a)(6).) Again, Adrian Sr. improperly asks this court to reassess E.'s credibility on this issue. We decline to do so. The juvenile court was in the best position to observe E.'s testimony and assess her truthfulness on this question and her commitment to permanence for the minors. Adrian Sr. cannot demonstrate the lack of substantial evidence supporting the court's findings by raising credibility issues.

We conclude that the evidence supported the juvenile court's finding that the minors' placement with E. was "not appropriate in view of the criteria in Section 361.3." (§ 387, subd. (b).) The juvenile court therefore properly sustained the allegations of the petition.

C

Adrian Sr. also challenges the court's dispositional order placing Adrian Jr. and Markus in foster care. Adrian Sr. argues that the court did not make a required factual

finding, which he appears to contend is a finding of sufficient risk to the minors in E.'s care or a need for removal from E. We disagree that the juvenile court was required to make such factual findings.

As we have explained, after its jurisdictional finding on a petition under section 387, the juvenile court is required to consider disposition of the minor under the procedures applicable to initial disposition hearings. (Cal. Rules of Court, rule 5.565(e)(2); *In re A.O.*, *supra*, 185 Cal.App.4th at p. 110.) If the petition was filed to remove the minor from a relative caretaker, the only factual finding necessary is set forth in the statute: that the minor's placement was "not appropriate in view of the criteria in Section 361.3."[9] (§ 387, subd. (b).) This standard was added because "the existing law did 'not provide a clear statutory standard for removal of children from a relative foster care provider.' " (*In re H.G.* (2006) 146 Cal.App.4th 1, 14, fn. 9 (*H.G.*).)

In *H.G.*, this court reversed jurisdictional and dispositional orders under section 387 because the juvenile court did not properly consider the relative placement factors under section 361.3. (*H.G.*, *supra*, 146 Cal.App.4th at p. 15.) The court also did not consider disposition or hold a disposition hearing under the California Rules of Court, rule 5.565(e)(2). (*H.G.*, at p. 17.) Contrary to Adrian Sr.'s, contention, *H.G.* did not

---

9      If a petition under section 387 seeks removal from a *parent*, courts have held that the juvenile court must make the additional factual findings required under section 361, subdivision (c). (See, e.g., *In re T.W., supra*, 214 Cal.App.4th at p. 1163; *In re Javier G.* (2006) 137 Cal.App.4th 453, 462; *Joel H., supra*, 19 Cal.App.4th at p. 1201, fn. 14; but see *In re A.O.*, *supra*, 185 Cal.App.4th at pp. 111-112.) Where, as here, the petition seeks removal from a *relative*, no analogous statute requires findings beyond those mandated by section 387 itself.

require a finding of "significant risk" at disposition. *H.G.* merely required that disposition be considered. (*Ibid.* ["[W]e conclude that the court nevertheless erred when it did not hold a disposition hearing as required by [the rule]."].) Pursuant to the statute, no further factual findings are necessary if the juvenile court decides to remove the minor from a relative's care at disposition. (§ 387, subd. (b); see *H.G.*, *supra*, at p. 14, fn. 9; *In re A.O.*, *supra*, 120 Cal.App.4th at p. 1061.)

Here, the juvenile court held a separate hearing on disposition in accordance with the California Rules of Court, rule 5.565(e)(2). The court reiterated its finding that placement with E. was not appropriate under the relative placement factors in section 361.3. It then expressly ordered the minors placed in licensed foster care. Substantial evidence supports the court's finding for the reasons we have already explained.[10]

## II

Adrian Sr. also challenges the juvenile court's finding that the beneficial parent-child relationship to adoption did not apply to prevent termination of his parental rights. Brianna joins Adrian Sr.'s arguments. "If the court determines . . . by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption." (§ 366.26, subd. (c)(1).) An exception to this general rule applies if "[t]he court finds a compelling reason for

---

[10]    Although not necessary for our conclusion, we note that Adrian Sr. did not seek placement with E. during the juvenile court's disposition hearing. Instead, Adrian Sr. advocated for placement with the minor's paternal aunt or, in the alternative, continued evaluation of relative placement.

determining that termination would be detrimental to the child . . . ." (§ 366.26, subd. (c)(1)(B).) This exception may be found where "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) "The parent has the burden to show that the statutory exception applies." (*In re Derek W.* (1999) 73 Cal.App.4th 823, 826.)

"This court has interpreted the phrase 'benefit from continuing the relationship' in section 366.26, subdivision (c)(1)(B)(i) to refer to a 'parent-child' relationship that 'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent[-]child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent[-]child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated.' " (*In re C.F.* (2011) 193 Cal.App.4th 549, 555.)

"To overcome the preference for adoption and avoid termination of the natural parent's rights, the parent must show that severing the natural parent-child relationship would deprive the child of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed. [Citations] A biological parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466.)

27

"The parent must do more than demonstrate 'frequent and loving contact[,]' [citation] an emotional bond with the child, or that parent and child find their visits pleasant. [Citation.] Instead, the parent must show that he or she occupies a 'parental role' in the child's life." (*In re Derek W.*, *supra*, 73 Cal.App.4th at p. 827.) "The factors to be considered when looking for whether a relationship is important and beneficial are: (1) the age of the child, (2) the portion of the child's life spent in the parent's custody, (3) the positive or negative effect of interaction between the parent and the child, and (4) the child's particular needs." (*In re Angel B.*, *supra*, 97 Cal.App.4th at p. 467.)

We review the juvenile court's finding that the exception does not apply for substantial evidence. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.) "We determine whether there is substantial evidence to support the trial court's ruling by reviewing the evidence most favorably to the prevailing party and indulging in all legitimate and reasonable inferences to uphold the court's ruling. [Citation.] If the court's ruling is supported by substantial evidence, the reviewing court must affirm the court's rejection of the exceptions to termination of parental rights under section 366.26, subdivision (c)." (*In re S.B.* (2008) 164 Cal.App.4th 289, 297-298.)

Here, the juvenile court found that Adrian Sr. has satisfied the first prong of the exception and "maintained regular visitation and contact with his children." (§ 366.26, subd. (c)(1)(B)(i).) As to the second prong, the evidence showed that any relationship between Adrian Sr. and his sons had been substantially disrupted by the acts of domestic violence that gave rise to the dependency case and that led to the minors' removal twice from Adrian Sr.'s care. After removal, Adrian Sr. continued to act inappropriately during

28

visits. On one occasion, Adrian Sr. left 15 minutes into his visit because Markus was crying and did not want to visit with him. On another occasion, Adrian Sr. was sarcastic and short with the minors and left after only a few minutes. At the end of visits, Adrian Jr. and Markus did not have trouble separating from Adrian Sr. They were excited to see their foster parents. Adrian Jr. once told his foster parent that he did not want to attend visits with Adrian Sr. In the Agency's opinion, Adrian Sr. did not occupy a parental role. His relationship with the minors was that of an extended family member.

The evidence supports the juvenile court's finding that any parent-child relationship was insufficiently beneficial to outweigh the benefits of adoption. Both minors were young and had spent a large portion of their lives out of Adrian Sr.'s custody. The evidence of Adrian Sr.'s interaction with the minors, including their unwillingness to visit with him, their acting out, and their indifference to visits ending, shows the lack of a positive relationship. (See *In re Angel B.*, *supra*, 97 Cal.App.4th at p. 467, fn. 4.) Finally, there is no evidence that Adrian Jr. and Markus have particular needs that can only be met by Adrian Sr.

Adrian Sr. points out that many of his visits were pleasant, that the minors called him "Daddy," and that the minors were mostly affectionate with him. Even in light of this evidence, the juvenile court was entitled to determine that the lack of a positive attachment was shown by other evidence, as we have discussed. Adrian Sr. also contends that the minors' lack of distress at the end of visits should be interpreted as a factor in favor of continuing the relationship because they were accustomed to the visits continuing. However, our standard of review requires that we draw all reasonable

29

inferences in favor of the juvenile court's order.  (*In re S.B.*, *supra*, 164 Cal.App.4th at p. 298.)  The minors' lack of distress is just as consistent, if not more so, with a *lack* of attachment between the minors and their father.  The juvenile court did not err in finding that the beneficial parent-child relationship did not apply.

DISPOSITION

The orders are affirmed.


IRION, J.

WE CONCUR:


McCONNELL, P. J.


McDONALD, J.